United States District Court
Southern District of Texas
**ENTERED**
February 13, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Sarah Smith, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> SJ Medical Center, LLC d/b/a § <br> St. Joseph Medical Center, § <br> § <br> *Defendant*. § | Civil Action No. 4:25-cv-00410 |

## MEMORANDUM AND RECOMMENDATION

This is a Family Medical and Leave Act ("FMLA") case. After obtaining entry of default, Dkt. 10, Plaintiff Sarah Smith filed a motion for default judgment against Defendant SJ Medical Center, LLC d/b/a St. Joseph Medical Center ("SJ Medical Center"). Dkt. 12. The motion also requests economic damages, liquidated damages, and attorneys' fees and costs. *See id.* at 2. After carefully considering Smith's submission, her pleading, the record, and the applicable law, it is recommended that her request for default judgment be granted in part, but an award of damages, attorneys' fees, and costs should await an evidentiary hearing.

## Background

The following facts are alleged in the complaint. For purposes of the pending motion, they are taken as true at this stage.

Since January 2009, Smith had worked as a charge nurse at SJ Medical Center. *See* Dkt. 6 at 2. On November 1, 2024, a hospital social worker told Smith that a baby who had been receiving treatment in the NICU would be going into foster care. *See id.* at 3. Smith decided to serve as the baby's foster parent, which was not uncommon for hospital employees to do. *See id.*

After Smith was approved to foster the baby, she informed her manager that she intended to apply for FMLA leave. *See id.* The next day, November 14, 2025, Smith submitted her FMLA paperwork for approval by the human resources department. *See id.* But that same day, Smith's manager placed her on administrative leave. *See id.* Smith's FMLA leave was approved on November 15, 2024. *See id.*

On November 20, 2024—only two days into her leave—Smith was terminated without warning. *See id.* The reason proffered for terminating her was that Smith accessed the baby's chart before she was approved as a foster. *See id.* But because Smith had been caring for the baby in her role as charge nurse—even before applying to foster the baby—Smith's job required her to access the baby's chart. *See id.*

Smith sued SJ Medical Center for FMLA violations on January 31, 2025. *See* Dkt. 1 (original complaint). She amended the complaint as a matter of course. *See* Dkt. 6. Her live pleading alleges two claims: for interference with FMLA rights and retaliation. *See id.* at 4-5.

Summons was issued on February 4, 2025. Dkt. 5. According to the return of service, SJ Medical Center was served "by hand delivering a" copy of the summons, amended complaint, and certificate of interested parties to George Martinez, "an authorized accepted agent employed by Registered Agent CT Corporation System, Inc., who is authorized to accept service of process for SJ Medical Center …." Dkt. 8.

SJ Medical Center did not answer or otherwise appear to defend this case. That prompted Smith to request entry of default, which the clerk of court granted. Dkts. 9, 10. She now moves for default judgment, seeking damages, attorneys' fees, and costs. Dkt. 12. The motion is ripe for resolution.

## Legal standard

Default proceedings involve three steps: default, entry of default, and default judgment. *See* Fed. R. Civ. P. 55. A default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "An entry of default is what the clerk enters when a plaintiff establishes the default by affidavit or otherwise pursuant to Rule 55(a)."

3

*Axcess Glob. Scis., LLC v. Ozcan Grp., Inc.*, 2024 WL 3259700, at *1 (S.D. Tex. July 1, 2024). A default judgment can then be entered if a plaintiff applies for such relief under Rule 55(b)(2). *See id.*

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States ex rel. M-CO Constr. Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). District courts have discretion to determine whether entry of default judgment is warranted. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). But the Fifth Circuit cautions that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). A plaintiff "is not entitled to a default judgment as a matter of right," even if the defendant "is technically in default." *Lewis*, 236 F.3d at 767 (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

A request for default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quotation omitted). "The well-pleaded allegations are assumed to be true, except those regarding damages." *Axcess Glob. Scis., LLC*, 2024 WL 3259700, at *2 (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

1975)). Any doubts about the appropriateness of a default judgment must be resolved in favor of the defaulting party. *See id.*

## Analysis

The appropriateness of default judgment depends on "(1) whether the entry of default judgment is procedurally warranted; (2) whether the substantive merits of the plaintiff's claim as stated in the complaint provide a sufficient basis for default judgment; and (3) whether and what relief the plaintiff should receive." *Allen & Overy v. Zaziski*, 2022 WL 19506, at *1 (S.D. Tex. Jan. 3, 2022) (citing *Neutral Gray Music v. Tri-City Funding & Mgmt. LLC*, 2021 WL 1521592, at *2-3 (S.D. Tex. Mar. 30, 2021)). Smith has established that default judgment is merited, both in procedure and substance. But a hearing is necessary to determine the appropriate relief.

### I.    Smith has shown that she properly served SJ Medical Center.

The first issue concerns this Court's jurisdiction to grant default judgment. *See Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (describing this as the court's "affirmative duty" when addressing a request for default judgment). Subject-matter jurisdiction is proper because Smith's claims arise under federal law, namely the FMLA. *See* 29 U.S.C. § 2615(a) (prohibited acts under the FMLA); 28 U.S.C. § 1331 (federal question jurisdiction). And for personal jurisdiction, the key inquiry here is whether SJ Medical Center was properly served. *See*

5

*Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999); *see also Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 672 (5th Cir. 2015) (noting that "proper service of process" is "a jurisdictional prerequisite to the entry of a default judgment").

There are two avenues for serving entities like SJ Medical Center. One option is to serve the entity under the law of the state where the district court is located or where service was made. *See* Fed. R. Civ. P. 4(h)(1)(A) (incorporating Rule 4(e)(1)). The second option is to serve the summons and complaint on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant ...." Fed. R. Civ. P. 4(h)(1)(B).

Service here was effectuated under the law of Texas, where this Court sits. In Texas, the summons ("citation") and pleading can be served by delivering them in person to the defendant. *See* Tex. R. Civ. P. 106(a)(1). Service on an entity can be effectuated by serving the entity's registered agent, which may be another entity. *See* Tex. Bus. Orgs. Code Ann. § 5.201(b)(2)(B); *see also Peterson v. LVNV Funding LLC*, 2026 WL 249738, at *3 (E.D. Tex. Jan. 27, 2026) ("Courts in Texas [] permit service of process on an LLC's registered agent, manager, or any member."). And an entity acting as a registered agent "must be served through its [human] agents." *Asset Prot. &*

*Sec. Servs., LP v. Armijo*, 570 S.W.3d 377, 383 (Tex. App.—El Paso 2019, no pet.). Texas law also requires proof that the person who was served "was in fact" the entity's registered agent or was "otherwise authorized to accept service" on the entity's behalf. *See Tubo Rests., LLC v. Reid's Refrigeration Inc.*, 657 S.W.3d 490, 495, 499 (Tex. App.—El Paso 2022, no pet.); *see also, e.g., Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp.*, 62 S.W.3d 308, 310 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The record includes an affidavit of service. Such a "return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein." *See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). Here, the return of service reflects that, on March 18, 2025 at 2:55 p.m., the process server hand delivered copies of the summons, the live amended complaint, and the certificate of interested parties to George Martinez at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Dkt. 8. The affidavit describes Martinez as "an authorized acceptance agent employed by ... CT Corporation System, Inc.," which is SJ Medical Center's corporate registered agent for service of process. *Id.*

The affidavit includes all the information required by Texas law. *See* Tex. R. Civ. P. 107(b) (requirements for returns of service). And nothing in the affidavit raises doubts regarding the propriety of service. To the contrary, it adequately attests both that the individual who was served had authority to

7

accept service on CT Corporation's behalf, and that CT Corporation is SJ Medical Center's registered agent for service of process. Because Smith has met her burden to show valid service, this Court can exercise personal jurisdiction over SJ Medical Center.

## II. Default judgment is procedurally warranted.

The next question is whether default judgment is procedurally warranted. Six factors inform this inquiry: "[(1)] whether material issues of fact are at issue, [(2)] whether there has been substantial prejudice, [(3)] whether the grounds for default are clearly established, [(4)] whether the default was caused by a good-faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (numeration added). All factors favor default judgment.

First, there are no disputed factual issues because SJ Medical Cetner has not responded to this suit. Smith's well-pleaded facts are thus taken as true. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact").

Second, SJ Medical Center's lack of response prejudiced Smith by halting the adversarial process and thwarting her ability to obtain relief. *See Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020);

*Innovative Sports Mgmt., Inc. v. Paisa's Truck LLC*, 2024 WL 625316, at *3 (S.D. Tex. Feb. 14, 2024) (prejudice where the defendant's "failure to respond threatens to bring the adversary process to a halt") (quotation omitted).

Third, grounds for default are clearly established. The Clerk of Court properly entered default after SJ Medical Center failed to answer or otherwise defend. *See* Dkt. 10 (entry of default); Fed. R. Civ. P. 55 (failure to appear is grounds for default). Such a failure to defend or appear likewise permits entry of default judgment. *See United States v. $37,603.00 in US Currency*, 2021 WL 3013337, at *3 (S.D. Tex. July 16, 2021).

For the last three factors, nothing in the record indicates that the default resulted from a good faith mistake or excusable neglect. Neither does anything suggest that default judgment would be unduly harsh or vulnerable to challenge later. *See Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 781 (E.D. Tex. 2023) (default judgment was "not unusually harsh" because defendants "had ample opportunity to respond" but "failed to do so"); *see also Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008) (considerations for setting aside a default judgment are: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented") (quotation omitted). All factors indicate that default judgment is procedurally appropriate.

### III.   Default judgment is also substantively appropriate.

The next inquiry examines the merits of Smith's claims. There must be "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu*, 515 F.2d at 1206. The Court evaluates whether the factual allegations in the complaint, if taken as true, would state a claim upon which relief can be granted. *See United Cmty. Bank, Inc. v. Loven Bf, Inc.*, 2020 WL 5045310, at *2 (S.D. Tex. July 22, 2020) (quoting *Shaw v. Galo Equip. & Constr., LLC*, 2020 WL 3118928, at *2 (W.D. Tex. June 12, 2020)). This is a lower threshold than the standard for surviving a motion to dismiss under Rule 12(b)(6). *See Wooten*, 788 F.3d at 499-500 (allegations need only provide fair notice of the claim under Rule 8, particularly when the defaulting defendant chose to forgo moving for dismissal or for a more definite statement).

In Count I of her amended complaint, Smith alleges that SJ Medical Center violated the FMLA by interfering with her exercise of protected rights. *See* Dkt. 6 at 4. The FMLA makes it illegal for an employer to "interfere with, restrain, or deny the exercise of" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). Those rights include "an employee's right to be reinstated to [her] previous position or an equivalent position upon [her] return from FMLA leave." *Way v. City of Missouri City*, 133 F.4th 509, 523 (5th Cir. 2025) (quotation omitted) (citing 29 U.S.C. § 2614(a)(1)). To establish a *prima facie* case of FMLA interference, Smith must show: (1) she was an eligible employee;

10

(2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her benefits to which she was entitled under FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Smith stated an FMLA interference claim. For the first element, she alleges that she was an employee covered by the FMLA because she worked at least 1,250 hours of service in the 12 months leading up to her termination. *See* Dkt. 6 at 2; 29 U.S.C. § 2611(2)(A) (defining "eligible employee"). She also alleged that SJ Medical Center is a covered FMLA employee, thereby satisfying the second element. *See* Dkt. 6 at 2. On the third element, Smith asserts that she was entitled to leave to care for her foster child, which the FMLA itself reflects. *See id.* at 3; 29 U.S.C. §§ 2611(12), 2612(a)(1)(C) (employees are entitled to leave to care for foster children). And Smith provided notice, as the fourth element requires, when telling her manager that she intended to apply for FMLA leave and submitting a formal request for leave the very next day. *See* Dkt. 6 at 3.

For the last element, Smith adequately alleged that SJ Medical Center denied her benefits to which she was entitled. Despite approving her request for leave—which would have required SJ Medical Center to allow Smith's return to work after finishing that leave—SJ Medical Center terminated her employment only two days after the leave began. *See id.* This is enough to

show that SJ Medical Center interfered with her rights under the FMLA. *See Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 307 (5th Cir. 2021) (*prima facie* FMLA interference claim when plaintiff was terminated in the middle of leave, thereby interfering with his right to reinstatement).

Smith also asserts that SJ Medical Center violated the FMLA by retaliating against her. The relevant provision "prohibits employers from discharging … an individual for opposing any practice made unlawful by the act." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citing 29 U.S.C. § 2615(a)(2)). It thus "forbid[s] employers from terminating employees for having exercised or attempted to exercise FMLA rights." *See id.* "To establish a prima facie case for FMLA retaliation, [Smith] must show that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) she either was treated less favorably than a similarly situated employee who had not requested leave or the adverse decision was made because she took FMLA leave." *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 317 (5th Cir. 2013).

Smith sufficiently alleged an FMLA retaliation claim. The first element is met because Smith's status as a FMLA-eligible employee working for a FMLA-covered employer meant that she was protected by the FMLA. And the second and third elements are satisfied because Smith pleaded that she suffered an adverse employment action when SJ Medical Center terminated

her "because she sought and received leave under the FMLA." *See* Dkt. 6 at 4. The close temporal proximity between her request for leave and her termination—less than a week—is enough to demonstrate a causal link between the two events. *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021) (passage of one month between plaintiff's termination and the expiration of his FMLA leave was "close enough in time" to show a causal connection for a retaliation claim). She also claims the reason given for her termination—namely, her accessing the baby's chart—"was nonsensical" and "false" because it fell within her duties as a charge nurse. *See* Dkt. 6 at 3-4. Because Smith's allegations state valid FMLA interference and retaliation claims, default judgment is substantively appropriate.

### IV.   <u>**A damages hearing is required to award relief.**</u>

The final issue concerns Smith's request for damages and other monetary relief. "A default judgment does not establish damages, which must be supported by evidence." *United States v. Hernandez*, 794 F. Supp. 3d 456, 473 (W.D. Tex. 2025) (citing *Shipco*, 814 F.2d at 1014). And the Court "may conduct hearings … when, to enter or effectuate judgment, it needs to … determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).

An evidentiary hearing is unnecessary when "the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). "A sum capable of

mathematical calculation is one that can be 'computed with certainty by reference to the pleadings and supporting documents alone.'" *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) (quoting *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993)).

Smith seeks "an award of (i) economic damages in the amount of $38,312.16; (ii) liquidated damages in the amount of $38,312.16; and (iii) fees and costs in the amount of $5,628.49." Dkt. 12 at 2. She is entitled to (1) an award of lost wages with post-judgment interest, (2) liquidated damages, (3) and attorneys' fees and costs. But a hearing and further submissions are necessary to adequately quantify those figures.

### A. Smith's submission does not sufficiently establish the amount of damages.

Smith primarily seeks economic damages consisting of lost wages. *See* Dkt. 12 at 2. This comports with the FMLA, which permits damages for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation." *See* 29 U.S.C. § 2617(a)(1)(A)(i)(I). She also seeks an equivalent sum in liquidated damages. *See* Dkt. 12 at 2; 29 U.S.C. § 2617(a)(1)(A)(iii).

For actual damages, Smith requests $38,312.16 in back pay, which she alleges is the amount she would have received from the date she was terminated until the date she filed this suit. Smith derived that figure by first

dividing her total compensation for 2024 ($83,009.72) by 52 to glean her weekly pay of $1,596.34. *See* Dkt. 12-1 at 2 (declaration), 6-9 (2024 W-2s). She then multiplied this weekly pay by 24 weeks. *See* Dkt. 12-1 at 2. But for several reasons, her analysis is incomplete.

The number of days between Smith's termination and the date she filed this suit is two days less than 24 weeks. Yet Smith's calculations provide little insight into how to account for lost wages on daily basis. She also derives her 2024 income from the "social security wages" listed on her W-2s from that year. Yet does not explain why this is the appropriate metric to ascertain her 2024 salary, as opposed to using her pay stubs (one of which she attaches, Dkt. 12-1 at 5), average weekly earnings, or the "wages, tips, and other compensation" from her W-2s.

Moreover, damages under the FMLA are limited to wages lost "by reason of the violation." *See* 29 U.S.C. § 2617(a)(1)(A)(i)(I). Section 2617 "provides no relief unless the employee has been prejudiced by the violation …" *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Although Smith limits her request for back pay to the period between her termination and the date of filing suit, she does not explain whether she obtained new employment or had other sources of income during that period. *Cf. Adams v. Chime Sols., Inc.*, 2025 WL 2025005, at *3 (N.D. Tex. June 2, 2025) (declaration sufficiently supported lost wages for Title VII retaliation where it stated that plaintiff was

15

"actively looking for work and was not receiving any wages" following illegal termination), *adopted by* 2025 WL 2023029 (N.D. Tex. July 17, 2025).

Smith also does not explain how many weeks of FMLA she was entitled to receive, nor how many weeks SJ Medical Center had authorized. That is important because the FMLA did not require that Smith be paid during the period of leave. *See Ragsdale*, 535 U.S. at 84 (FMLA guarantees "12 weeks of *unpaid* leave each year" (emphasis added)). Absent an entitlement to be paid during the leave, Smith cannot recover lost wages during that period as damages. All these gaps necessitate a hearing to determine the appropriate quantum of lost wages.

### B. Liquidated damages cannot be resolved at this time.

The Court's inability to resolve Smith's damages at this stage also affects Smith's request for liquidated damages. "The FMLA provides that a court shall award liquidated damages equal to the damages due to lost compensation plus interest." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999) (citing 29 U.S.C. § 2617(a)(1)(A)(iii)). But the Court may reduce liquidated damages under the statute "[i]f an employer proves that it acted 'in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the FMLA] ...." *Id.* (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)).

16

There is no indication that SJ Medical Center acted in good faith or that it had reasonable grounds for believing that its actions were lawful under the FMLA. But because Smith has not sufficiently substantiated what wages she actually lost, the Court cannot resolve the corresponding amount of liquidated damages at this time.

### C. Post-judgment interest is available.

Smith also requests post-judgment interest on lost wages at the federal rate. *See* Dkt. 12 at 2; *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) ("[P]ost-judgment interest is calculated at the federal rate ...."). She is entitled to post-judgment interest under 28 U.S.C. § 1961, which allows for interest "on any money judgment in a civil case recovered in a district court." *See Martin v. Penske Logistics, LLC*, 2025 WL 1223565, at *5 (N.D. Tex. Apr. 28, 2025) (awarding post-judgment interest under 28 U.S.C. § 1961 based on FMLA claim); *Carroll v. Sanderson Farms, Inc.*, 2014 WL 549380, at *23 (S.D. Tex. Feb. 11, 2014) (same). Thus, once the damages issues are resolved, the ensuing final judgment should award post-judgment interest.

### D. Some of the requested fees and costs are reasonable.

Finally, Smith seeks attorneys' fees and costs. Under the FMLA, the Court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee ... and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).

Smith's current fee application does not account for the evidentiary hearing that will need to occur. So rather than resolve the issue of fees piecemeal, the better course is to wait until all attorney work is completed before evaluating the appropriate amount of attorneys' fees.

The Court does, however, note that certain sums sought for attorneys' fees and costs are not recoverable. For instance, fee applications should exclude "hours spent on clerical or nonlegal tasks" like filing documents. *See Thompson v. Cap. Link Mgmt., LLC*, 2024 WL 666119, at *4 (S.D. Tex. Jan. 31, 2024) (quoting *Jung v. Accredited Mgmt. Sols. LLC*, 2020 WL 4569994, at *7 (S.D. Tex. Aug. 6, 2020)), *adopted by* 2024 WL 665191 (S.D. Tex. Feb. 16, 2024). And recoverable costs are limited to those taxable under 28 U.S.C. § 1920. *See Carroll*, 2014 WL 549380, at *12; *see also Waller v. Salvation Army*, 2024 WL 3939568, at *6 (N.D. Tex. Aug. 26, 2024). That excludes costs for postage and private process servers. *See Smith W. Tex. Props., Ltd. v. Allied Prop. & Cas. Ins. Co.*, 555 F. Supp. 3d 342, 348-49 (W.D. Tex. 2021); *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) ("absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920," citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)). But the ultimate quantum of attorneys' fees and costs will be deferred until Smith files an updated application after the damages hearing occurs.

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Sarah Smith's motion for default judgment (Dkt. 12) be **GRANTED IN PART**, with respect to Plaintiff's request for a finding that SJ Medical Center is liable for violating the FMLA, but that her damages, attorneys' fees, and costs must await a hearing.

It is further **ORDERED** that the damages hearing will be scheduled by separate entry. After the hearing, the Court will set a deadline for filing a renewed application for attorneys' fees and costs.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 13, 2026, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge